IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TYRONE JAMAAL WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-3264-D-BN |
| | § | |
| HUNT COUNTY, TEXAS SHERIFF | § | |
| DEPARTMENT, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Tyrone Jamaal Williams, detained pending trial at the Hunt County jail, filed this *pro se* action under 42 U.S.C. § 1983 against governmental entities, officers, and employees related to his detention at the jail.

This action has been referred to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sidney A. Fitzwater.

The undersigned enters these findings of fact, conclusions of law, and recommendation that, for the reasons and to the extent explained below, the Court should find that Williams has stated claims that – at least so far – survive screening under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and should therefore be served or further screened; that certain claims should be dismissed with prejudice under those statutes; and that certain claims should be dismissed under those statutes without prejudice to Williams filing an amended complaint within a reasonable time to be set by the Court.

-1-

## Applicable Background

Williams's initial complaint, filed December 1, 2017, consisted only of a single-page, handwritten letter that specified no particular defendant but, in pertinent part, sought to file "charges against the Hunt County Sheriff Department for the illicit opening of [his] ... legal mail." Dkt. No. 3.

On December 4, 2017, the Court entered a notice of deficiency and order, noting that his complaint "does not comply with the applicable pleading standards," that "a plaintiff must allege more than labels and conclusions," and that, "while a court must accept all of the plaintiff's allegations as true, it is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" Dkt. No. 4 at 1-2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting, in turn, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); citing FED. R. CIV. P. 8(a); and further informing Williams that "to survive dismissal under *Twombly* and *Iqbal*, [he] need only 'plead facts sufficient to show' that the claims asserted have 'substantive plausibility' by stating 'simply, concisely, and directly events' that [he] contends entitle him ... to relief" (quoting *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (per curiam) (citing, in turn, FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)))).

In response to that notice, Williams filed an amended complaint on the court-provided form on January 5, 2018. *See* Dkt. No. 5. And, on January 8, 2018, the Court granted his motion for leave to proceed *in forma pauperis* ("IFP"). *See* Dkt. Nos. 6 & 7.

The amended complaint repeats his claims that the Sheriff's Office and/or its "Classification/Administration Dep't" "illicit[ly]" opened his legal mail, *see* Dkt. No. 5

at 3, and adds various claims against Hunt County Sheriff Randy Meeks and employees of his office, which the undersigned will address below, *see generally id.*

## Legal Standards

A district court is required to screen a civil action filed IFP and may summarily dismiss that action, or any portion of the action, if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Similarly, where a prisoner – whether he is incarcerated or detained prior to trial – seeks relief from a governmental entity or employee, the Court must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id.* § 1915A(b)(1).

As first explained to Williams in the December 4, 2017 notice of deficiency, dismissal for failure to state a claim "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson*, 135 S. Ct. at 347; emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346; *see Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)).

The rationale that factual plausibility (as opposed to legal labeling) controls the failure-to-state-a-claim analysis has even more force in this case, as the Court "must

-3-

construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *see United States v. Ayika*, 554 F. App'x 302, 308 (5th Cir. 2014) (per curiam) (a court has a "duty to construe *pro se* [filings] liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney"); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.' ... Granting leave to amend, however, is not required if the plaintiff has already pleaded [his] 'best case.' A plaintiff has pleaded [his] best case after [he] is apprised of the insufficiency of [his] complaint[ – such as the facts, as alleged, are conclusory. And a] plaintiff may indicate [he] has not pleaded [his] best case by stating material facts that [he] would include in an amended complaint to overcome the deficiencies identified by the court." *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009); citations and internal question marks omitted).

## Analysis

I.  <u>Legal mail</u>

Williams directs his constitutionally-based mishandling of legal mail claim to

one individual defendant, Sergeant Lunsford, and also to the Hunt County Sheriff's Office and/or a department in that office. *See* Dkt. No. 5 at 3, 5.

First, a plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the United States Court of Appeals for the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313.

The sheriff's department of a Texas county is not a jural entity subject to suit. *See, e.g., Magnett v. Dallas Cty. Sheriff's Dep't*, No. 3:96-cv-3191-BD, 1998 WL 51355, at *1 (N.D. Tex. Jan. 20, 1998). Logically, then, neither is a division or department within the sheriff's department a jural entity. *See, e.g., Puckett v. Walmart Store #5823*, No. 3:15-cv-2029-D-BN, 2017 WL 6612944, at *4 (N.D. Tex. Nov. 6, 2017), *rec. adopted*, 2017 WL 6611576 (N.D. Tex. Dec. 27, 2017).

And – where there is no allegation that the legal mail that was opened also was lost or destroyed or that, moreover, that the loss or destruction of that mail prejudiced a Section 1983 plaintiff's position as a litigant, *see, e.g, Perez v. Tanner*, No. 3:17-cv-2846-N-BN, 2017 WL 7000283, at *3 (N.D. Tex. Dec. 22, 2017), *rec. accepted*, 2018 WL 501601 (N.D. Tex. Jan. 19, 2018) – even as to the individual defendant that Williams appears to implicate as opening his legal mail, Sergeant Lunsford, *see, e.g.,* Dkt. No. 5 at 5, this claim fails: "[A]bsent some showing that the defendants violated [a

plaintiff's] *federal* constitutional rights, complaints about the violation of state statutes, state procedural or evidentiary rules, or state agency regulations are insufficient as a matter of law to support a claim for relief under Section 1983." *Rodarte v. Beneficial Tex. Inc.*, No. SA-16-CA-71-RP, 2016 WL 1312637, at *8 (W.D. Tex. Apr. 4, 2016) (collecting cases, emphasis in original, and concluding that where a plaintiff "alleges merely that any of the defendants failed to comply with ... state procedures for handling prisoner mail ... those allegations, standing alone, do not provide even an arguable basis for recovery or for a finding that [a plaintiff] is entitled to any relief under Section 1983").

The legal-mail claims should therefore be dismissed with prejudice.

## II. <u>Sergeant Messick</u>

Williams alleges that Sergeant Messick, described as the grievance investigator, "intentionally disposed and/or refused to investigate [his] grievance complaints filed against [the] medical [department] and/or staff detailing medical neglect to [his] health." Dkt. No. 5 at 6; *see also id.* at 3. But claims based merely on how grievances are handled – like this claim – fail to state a claim under Section 1983, as the Fifth Circuit has held that inmates do not have a constitutionally-protected interest in having grievances resolved to their satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (per curiam) ("As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."); *see also Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (per curiam) (holding that the plaintiff had no actionable 42 U.S.C.

§ 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances); *Lijadu v. I.N.S.*, Civ. A. No. 06-0518, 2007 WL 837285, at *3 (W.D. La. Feb. 21, 2007) ("[D]etainees do not have a constitutionally protected right to a grievance procedure – much less one that complies with their own personal preferences." (citation and internal quotation marks omitted)).

A prison system is not required to establish grievance procedures, and the failure of a jail or prison to establish – or adhere to a voluntarily established – grievance procedure does not rise to the level of an actionable constitutional claim. *See* 42 U.S.C. § 1997e(b); *see also Bradford v. Kuykendall*, No. 6:04-cv-565, 2005 WL 1521016, at *5 (E.D. Tex. June 24, 2005) (citing *Geiger*, 404 F.3d at 374). Accordingly, inmates have no basis for a civil rights lawsuit simply because they are unhappy with grievance procedures. *See id.*

The claims against Sergeant Messick, based on grievances, should therefore be dismissed with prejudice.

III.    Sheriff Meeks, Captain Sherman, and Lieutenant Stroud

As to the Sheriff and Captain Sherman, Williams alleges that he was "forcibly housed in a sewage and/or waste and mosquito infested cell for a year and a half," which allegedly resulted in the need for medical care. Dkt. No. 5 at 3; *see also id.* at 6 (alleging that these defendants "ordered and forced me to live in sewage/waste, mosquito infested confine[d] space for an entire year and a half ... and separate weeks in black molded enclosures causing dozens of bite wounds and outbreaks that were

captured on camera").

"[S]ince pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that effectively confers upon them a set of constitutional rights that fall under the Court's rubric of 'basic human needs.'" *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). As a pretrial detainee, Williams's basic human needs are "protected by the Due Process Clause of the Fourteenth Amendment." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (citing *Cupit v. Jones*, 835 F.2d 82, 84-85 (5th Cir. 1987)), which affords him "protections [that are] 'at least as great as ... those available to a convicted prisoner,'" *Price v. Valdez*, No. 3:16-cv-3237-D, 2017 WL 3189706, at *5 (N.D. Tex. July 27, 2017) (quoting *Hare*, 74 F.3d at 639; original brackets omitted).

"Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 644-45). "At the outset, the Court must determine whether a plaintiff alleging violations of his Fourteenth Amendment rights is challenging a condition of confinement or an 'episodic act or omission.'" *Campos v. Webb Cty. Sheriff's Dep't*, No. 5:12-CV-7, 2014 WL 1379668, at *5 (S.D. Tex. Apr. 3, 2014) (citation omitted).

Here, it appears that Williams's claims against the Sheriff and Captain Sherman as currently alleged fall into the first category. *See, e.g., id.* ("The Fifth Circuit has explained that challenges to ... sanitary conditions ... are generally

considered challenges to the conditions of confinement." (citing *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (en banc))).

> If the plaintiff has properly stated a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because, ... intent may be inferred from the decision to expose a detainee to an unconstitutional condition. A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc. In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice."

*Shepherd*, 591 F.3d at 452 (citing *Scott*, 114 F.3d at 53 n.2, and then quoting *Hare*, 74 F.3d at 645).

But Williams has failed to allege – or allege facts from which it may be inferred – that the conditions of confinement on which he bases these claims stem from any policy – explicit or otherwise. *Cf. id.* ("More often, ... a plaintiff's claim, properly characterized, faults specific jail officials for their acts or omissions because the plaintiff cannot establish the existence of an officially sanctioned unlawful condition."). And, to the extent that Williams's claims against the Sheriff and Captain Sherman are not based on a policy but on misconduct by those officials, he must allege – or allege facts from which it may be inferred – that those officials "acted or failed to act with deliberate indifference to [his] needs." *Hare*, 74 F.3d at 648; *see, e.g., Galada v. Gatson-Riley*, No. 1:07cv937-LG-JMR, 2010 WL 3120069, at *12-*13 (S.D. Miss. June 24, 2010) ("Since 'vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution.' Plaintiff's pleadings, even if accepted as true, fail to allege that Defendant Gatson-Riley was even aware that Plaintiff was being exposed to the allegedly unconstitutional confinement conditions, much less that Defendant Gatson-Riley imposed the particular conditions as a form of punishment.... After reviewing Plaintiff's Complaint and Amended Complaint, the Court is unable to conclude that Plaintiff's allegations warrant an inference of punitive intent on the part of Defendant Gatson-Riley. Plaintiff does not allege that the conditions at the jail were maintained either arbitrarily or purposelessly, and he presents no facts from which such an inference may fairly be drawn." (citation omitted)).

For these reasons, the Fourteenth Amendment claims against the Sheriff and Captain Sherman should be dismissed without prejudice to Williams's ability to file an amended complaint as to these defendants.

Williams asserts a separate claim regarding the conditions of his confinement, based on a specified episode, against Lieutenant Stroud – that Stroud "forced me into an out of service cell, broken toilet and shower for over 3 weeks to teach me a lesson." Dkt. No. 5 at 5. This allegation, which must be accepted as true for present purposes, does allow an inference that Lieutenant Stroud acted with punitive intent to subject Williams to unconstitutional confinement conditions and therefore states a claim against Lieutenant Stroud for screening purposes. *Cf. Mims v. Hardy*, No. 11 C 6794, 2013 WL 2451149, at *10 (N.D. Ill. June 5, 2013) ("Courts have held that unsanitary conditions of confinement stemming from broken plumbing[ – particularly over an extended period of time – ]may rise to the level of an Eighth Amendment violation."

-10-

(collecting cases)); *compare Crouchman v. Pickens Cty. Council*, Civ. A. No. 9:16-0804-CMC-BM, 2017 WL 767185, at *12 (D.S.C. Feb. 3, 2017) ("Plaintiff's allegation in his Complaint that sometimes his toilet or sink would be broken 'for days' and that on occasion he had to be 'let out to use the common area bathroom because his toilet don't work' does not establish a constitutional violation." (citations omitted)), *rec. adopted*, 2017 WL 749393 (D.S.C. Feb. 27, 2017).

IV.    Nurse Jana and Nurse Angela

As to these nurse defendants, Williams alleges, generally, that he was "denied emergency services/neglect to provide adequate nutrition (extreme 60-70 lbs. weight loss)/refuse in-house assistance." Dkt. No. 5 at 3; *see id.* at 4 (further alleging that Nurse Angela "refuse[d] to provide medical assistance while my life was in imminent jeopardy").

"[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). Through the procedural and substantive due process guarantees of the Fourteenth Amendment, then, "the deliberate indifference standard articulated ... in *Farmer v. Brennan*, 511 U.S. 825, 837-40 (1994), applies to pretrial detainees." *Thomas v. Mills*, 614 F. App'x 777, 778 (5th Cir. 2015) (per curiam) (citing *Hare*, 74 F.3d at 643).

To the extent that Williams is alleging a constitutional violation under the deliberate indifference standard, he must show that jail officials acted with deliberate indifference such as to cause the "unnecessary and wanton infliction of pain." *Estelle*

*v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Delays in providing medical care do not rise to the level of a constitutional violation unless the delay results in substantial harm. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). And an incorrect diagnosis, a disagreement with medical treatment, or a failure to provide additional medical treatment, alone, does not constitute deliberate indifference. *See Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *see also Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (to establish an Eighth Amendment violation, a plaintiff must show that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs").

In addition to the allegations set out above, Williams further alleges that, on November 26, 2016, he informed Nurse Jana that he was unable to support his head "due to excruciating neck pain," and that she responded that "the hospital isn't an option" and "left [him] in that state." Dkt. No. 5 at 5. And, as to Nurse Angela, Williams alleges that, on August 17, 2017, she was informed of his "medical emergency calls" and failed to respond for 11 hours, and, when she did arrive, she refused him "medical assistance despite [his] dizziness, numbness and severe chest pain and pressure walking off after she stat[ed that] she [was] upset with me." *Id.*

For purposes of screening, Williams, through these facts, has alleged sufficient wanton disregard by these defendants to state a deliberate indifference claim. *Cf., e.g.,*

-12-

*Houston v. Dunn*, 487 F. App'x 164, 165 (5th Cir. 2012) (per curiam) ("Houston's assertions, accepted as true, show that he experienced a two-hour delay in receiving treatment, not a denial of treatment, and his condition was treated by a doctor. Thus, he fails to state a claim for which relief can be granted." (citations omitted)); *Stephens v. Scott*, 244 F. App'x 603, 606 (5th Cir. 2007) (per curiam) ("The district court correctly dismissed the claims, noting that the medical records show Stephens was treated within three hours of his encounter with police and that there was no allegation that the delay resulted in substantial harm." (citation omitted)).

Williams also alleges, against Nurse Jana, a claim related to the meals served at the jail – that the "lack of nutrition" offered by those meals caused his "sudden weight loss." Dkt. No. 5 at 6. This allegation is similar to his conditions of confinement claims against the Sheriff, Captain Sherman, and Lieutenant Stroud and, like the claims against the Sheriff and Captain Sherman, fails to state a claim for similar reasons. *See, e.g., Grant v. Aubrey Cole Law Enf't Ctr.*, No. 1:09-CV-772, 2012 WL 3112060, at *5 (E.D. Tex. June 26, 2012) ("Plaintiff's allegations concerning the quality of the food served also fails to state a constitutional claim. Plaintiff has offered no evidence or even made an allegation that the food is served in the alleged manner as a form of punishment."), *rec. adopted*, 2012 WL 3115036 (E.D. Tex. July 31, 2012).

V.    Shackles

Finally, Williams asserts factual allegations concerning the use of shackles on him, against Transport Officer Ackers and Sergeant Lunsford. *See* Dkt. No. 5 at 3, 4, 6. As to Officer Ackers, Williams alleges that he "purposely placed leg irons [on him]

with entirely harsh pressure and setting a shock monitor on top forcing immediate limp [and] permanent scaring on [Williams's] ankles." *Id.* at 6; *see also id.* at 3. But, as to Sergeant Lunsford, all Williams alleges is "[a]ssault using shackles to cause bodily injury." *Id.* at 4.

These allegations implicate claims for excessive force by a pretrial detainee. And, as the Supreme Court of the United States recently held, such claims – brought under the Fourteenth Amendment's Due Process Clause, which "protects a pretrial detainee from the use of excessive force that amounts to punishment," *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989), and is not simply "an incident of some other legitimate governmental purpose," *Bell*, 441 U.S. at 538 – must not be approached the same as excessive force claims brought by prisoners under the Eighth Amendment's Cruel and Unusual Punishment Clause: "The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015) (citations omitted).

Therefore, "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one," and, "in the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose' or that the actions 'appear excessive in relation to that purpose.'" *Id.* at 2473 (quoting *Bell*, 441 U.S. at 561). "It is enough," then, "that a pretrial detainee show that the 'force purposely or knowingly used against him was objectively unreasonable,' regardless of

-14-

an officer's state of mind." *Randolph v. Potter*, Civ. A. No. PWG-16-2739, 2017 WL

3158775, at *2 (D. Md. July 21, 2017) (quoting *Kingsley*, 135 S. Ct. at 2472). That said,

to use of force upon the pretrial detainee must be deliberate, not accidental:

> That is because, as [the Supreme Court has] stated, "liability for
> *negligently* inflicted harm is categorically beneath the threshold of
> constitutional due process." *County of Sacramento v. Lewis*, 523 U.S. 833,
> 849 (1998) (emphasis added). *See also Daniels v. Williams*, 474 U.S. 327,
> 331 (1986) ("Historically, this guarantee of due process has been applied
> to deliberate decisions of government officials to deprive a person of life,
> liberty, or property"). Thus, if[, for example,] an officer's Taser goes off by
> accident or if an officer unintentionally trips and falls on a detainee,
> causing him harm, the pretrial detainee cannot prevail on an excessive
> force claim. But if the use of force is deliberate – *i.e.,* purposeful or
> knowing – the pretrial detainee's claim may proceed.

*Kingsley*, 135 S. Ct. at 2472.

And, in *Kingsley*, the Supreme Court, relying on *Graham*, set out factors as

illustrative of "the types of objective circumstances potentially relevant to a

determination of excessive force" – " the relationship between the need for the use of

force and the amount of force used; the extent of the plaintiff's injury; any effort made

by the officer to temper or to limit the amount of force; the severity of the security

problem at issue; the threat reasonably perceived by the officer; and whether the

plaintiff was actively resisting." *Id.* at 2473; *see also id.* ("A court must also account for

the 'legitimate interests that stem from the government's need to manage the facility

in which the individual is detained,' appropriately deferring to 'policies and practices

that in the judgment' of jail officials 'are needed to preserve internal order and

discipline and to maintain institutional security.'" (quoting *Bell*, 441 U.S. at 540;

brackets omitted)).

-15-

Here, Williams fails to plausibly allege excessive force claims. Quite simply, his factual allegations are not sufficient to determine whether, objectively speaking, the use of the shackles – which he alleges, as applied by Officer Ackers, "harshly compress[ed his] ankles" – was either not rationally related to a legitimate purpose or excessive in relation to that purpose or, accepting the allegation that Williams's ankles were harshly compressed, was deliberate and not accidental. For example, shackles are commonly used in a jail, especially in transporting a detainee, and Williams has alleged no nonconclusory details from which the Court may infer that the shackles were used outside of a normal purpose or for an abnormally long period of time. *Cf., e.g., Torrez v. Semple*, No. 3:17-cv-01211(SRU), 2017 WL 3841686, at *3 (D. Conn. Sept. 1, 2017) ("Torrez alleges that he was walking back to the bull pen in compliance with Officer Castillo's order when Officer Castillo moved immediately in front of Torrez. Although Torrez raised his hands to indicate he did not want any trouble, Officer Castillo punched him. In addition, Officer Anderson also used force against him and, instead of intervening to protect Torrez, Officer Pisano deliberately mischaracterized the incident. Those allegations suffice to satisfy the requirement of *Kingsley*."); *Randolph*, 2017 WL 3158775, at *2 ("Randolph's allegation that he was placed in restraints, shackles, and handcuffs for nearly seven hours and then he passed out is sufficient to state a plausible claim of excessive force.").

The deliberate indifference claims should therefore be dismissed without prejudice to Williams's ability to file an amended complaint related to these allegations.

-16-

**Recommendation**

The Court should allow to proceed – to service or to further screening – the claim against Defendant Lieutenant Stroud (based on the conditions-of-confinement episode alleged as to him) and the claims against Defendants Nurse Angela and Nurse Jana (based on deliberate indifference/alleged denial of medical care); the Court should dismiss the legal-mail and grievance claims with prejudice; and the Court should dismiss the remainder of the claims without prejudice to Plaintiff Tyrone Jamaal Williams filing an amended complaint within a reasonable time to be set by the Court. And this action should remain referred to the undersigned for further screening.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 4, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE