IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TYRONE JAMAAL WILLIAMS, § <br> § <br> Plaintiff, § <br> § <br> V. § <br> § <br> HUNT COUNTY, TEXAS SHERIFF § <br> DEPARTMENT, ET AL., § <br> § <br> Defendants. § | No. 3:17-cv-3264-D-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff Tyrone Jamaal Williams, detained pending trial at the Hunt County jail, filed this *pro se* civil rights against governmental entities, officers, and employees related to his detention at the jail. His case was referred to the undersigned United States magistrate judge for screening under 28 U.S.C. § 636(b) and a standing order of reference from Senior United States District Judge Sidney A. Fitzwater.

After Williams filed an amended complaint in response to a court order notifying him of deficiencies in his original complaint, *see* Dkt. Nos. 3, 4, & 5, the Court screened the claims as amended, *see* Dkt. No. 9, and determined (1) that Williams's claims against Defendant Lieutenant Stroud (based on his allegedly confining Williams in an out-of-service cell), against Defendant Nurse Angela (based on an alleged November 26, 2016 deliberate-indifference incident), and against Defendant Nurse Jana (based on an alleged August 17, 2017 deliberate-indifference incident) should be allowed to proceed; (2) that Williams's legal-mail and grievance claims should be dismissed with

prejudice; and (3) that the remainder of his claims as amended should be dismissed without prejudice to his filing an amended complaint, *see Williams v. Hunt Cnty., Tex. Sheriff Dep't*, No. 3:17-cv-3264-D-BN, 2018 WL 2031915 (N.D. Tex. Apr. 4, 2018), *rec. adopted*, 2018 WL 2018592 (N.D. Tex. May 1, 2018) ("*Williams I*").

Williams filed a one-page second amended complaint. *See* Dkt. No. 13. To further the screening of Williams's claims, the Court ordered the Hunt County Sheriff's Department ("HCSD") to undertake a review of the subject matter underlying Williams's claims – to ascertain applicable facts and circumstances and to gather relevant jail and medical records – and to prepare a written report under *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). *See* Dkt. No. 14. HCSD responded by filing a *Martinez* report, through which it presented to the Court more than 300 pages of jail and medical records. *See* Dkt. No. 15; *see also Richie v. Univ. of Tex. Med. Branch Hosp. Galveston*, 581 F. App'x 405, 407 n.2 (5th Cir. 2014) (per curiam) (recognizing that courts may obtain medical records "in the form of a *Martinez* report").

With the assistance of this report, the undersigned has screened Williams's remaining claims and now enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss this action with prejudice for failure to state a claim on which relief may be granted.

**Legal Standards**

Where a prisoner – whether he is incarcerated or detained prior to trial – seeks relief from a governmental entity or employee, a district court must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the

complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1); *see also* 28 U.S.C. § 1915(e)(2)(B).

Dismissal for failure to state a claim "turns on the sufficiency of the '*factual allegations*' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 347 (2014) (per curiam); emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. Indeed, to survive dismissal under the framework of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), plaintiffs need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contends entitle them to relief. *Johnson*, 135 S. Ct. at 347 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *see also Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (a court need "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions" (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); citation omitted)).

This rationale has even more force here, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v.*

*Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.' ... Granting leave to amend, however, is not required if the plaintiff has already pleaded [his] 'best case.' A plaintiff has pleaded [his] best case after [he] is apprised of the insufficiency of [his] complaint. [And a] plaintiff may indicate [he] has not pleaded [his] best case by stating material facts that [he] would include in an amended complaint to overcome the deficiencies identified by the court." *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009); citations and internal quotation marks omitted).

A *Martinez* report, like an evidentiary hearing held under *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), is "a tool" to be used to further develop the factual basis of an *in forma pauperis* or prisoner complaint, to determine whether *sua sponte* dismissal is appropriate. *Wiley v. Thompson*, 234 F. App'x 180, 182 (5th Cir. 2007) (per curiam) (recognizing that the United States Court of Appeals for the Fifth Circuit has "adopted the *Martinez* report as a tool" and citing *Cay v. Estelle*, 789 F.2d 318, 323 n.4, 324 (5th Cir. 1986) ("Regardless of the means used to develop the factual basis of a claim, dismissal under [either 28 U.S.C. § 1915(e) or § 1915A] is appropriate whenever

-4-

it becomes clear that an IFP [or prisoner] complaint is without merit."), *overruled on other grounds by Denton v. Hernandez*, 504 U.S. 25 (1992)); *accord Hamer v. Jones*, 364 F. App'x 119, 122 n.2 (5th Cir. 2010) (per curiam) ("This court has adopted the procedures used in *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), as a tool by which an administrative record is constructed to assist in assessing prisoner litigation under 28 U.S.C. § 1915." (citing *Norton v. Dimazana*, 122 F.3d 286, 292-93 (5th Cir. 1997))).

Information provided through "[a] *Martinez* report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits." *Newby v. Quarterman*, 325 F. App'x 345, 354 (5th Cir. 2009) (per curiam) (citing *Shabazz v. Askins*, 980 F.2d 1333, 1334-35 (10th Cir. 1992)); *accord Hendrickson v. Davis*, 172 F. App'x 48, 48 (5th Cir. 2006) (per curiam); *see, e.g., Ruiz v. Mercado*, Civ. A. No. M-14-1921, 2016 WL 1166040, at *2 (S.D. Tex. Feb. 10, 2016) ("A court may base a dismissal under 28 U.S.C. § 1915(e) 'on medical or other prison records if they are adequately identified and authenticated,' such as those included in a *Martinez* report, and medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. However, 'a *Martinez* report may not be used to resolve material disputed fact findings when they are in conflict with the pleadings or affidavits.'" (citations omitted)), *rec. adopted*, 2016 WL 1162264 (S.D. Tex. Mar. 23, 2016); *see also Bailey v. Vincent*, 694 F. App'x 283, 284 (5th Cir. 2017) (per curiam) ("[A]lthough the State raised affirmative defenses in its *Martinez* report, Bailey has shown no error in the district court's reliance on the report, which was otherwise proper under the

circumstances." (citing *Parker v. Carpenter*, 978 F.2d 190, 191 n.2 (5th Cir. 1992) (approving the Tenth Circuit's *Martinez v. Aaron* procedures as a means "to enable the trial court to make a determination of frivolity" (citation, ellipses, and brackets omitted)))).

**Discussion**

I. <u>Second Amended Complaint</u>

Williams's second amended complaint consists of one page containing seven numbered sentences. *See* Dkt. No. 13. Each sentence essentially reiterate the claims made in the amended complaint. *See id.* So, to the extent that Williams re-alleges claims already dismissed by the Court – with or without prejudice – this complaint also fails to contain factual content sufficient to show that any claim now alleged (or re-alleged) has substantive plausibility. *See Johnson*, 135 S. Ct. at 347. The Court need not therefore consider this amended complaint further.

But, to the extent that Williams attempts to amend the three claims not previously dismissed by the Court, the undersigned will address the substantive plausibility of those claims below, accepting Williams's previous applicable factual allegations "as true and resolving all disputed facts in his favor," *Hendrickson*, 172 F. App'x at 48, while considering the record before the Court as supplemented (but not contradicted) by the *Martinez* report.

II. <u>Lieutenant Stroud</u>

"[S]ince pretrial detainees and convicted state prisoners are similarly restricted in their ability to fend for themselves, the State owes a duty to both groups that

-6-

effectively confers upon them a set of constitutional rights that fall under the Court's rubric of 'basic human needs.'" *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc). The basic human needs of pretrial detainees are "protected by the Due Process Clause of the Fourteenth Amendment." *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (citing *Cupit v. Jones*, 835 F.2d 82, 84-85 (5th Cir. 1987)), which affords them "protections [that are] 'at least as great as ... those available to a convicted prisoner,'" *Price v. Valdez*, No. 3:16-cv-3237-D, 2017 WL 3189706, at *5 (N.D. Tex. July 27, 2017) (quoting *Hare*, 74 F.3d at 639; original brackets omitted). "Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 644-45).

The Court initially determined that Williams's Fourteenth Amendment due process claim against Lieutenant Stroud based on an episodic act – that Stroud "forced [Williams] into an out of service cell, broken toilet and shower for over 3 weeks to teach [him] a lesson" – "allow[ed] an inference that Lieutenant Stroud acted with punitive intent to subject Williams to unconstitutional confinement conditions and therefore state[d] a claim against Lieutenant Stroud for screening purposes." *Williams I*, 2018 WL 2031915, at *5; *see also Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 874 (5th Cir. 2016) ("[T]hree elements must be established to prove an unconstitutional condition of confinement: '(1) "a rule or restriction or ... the existence of an identifiable intended condition or practice ... [or] that the jail official's acts or omissions were sufficiently

-7-

extended or pervasive"; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [a detainee's] constitutional rights.'" (quoting *Estate of Henson v. Wichita Cnty., Tex.*, 795 F.3d 456, 468 (5th Cir. 2015))).

As to this claim, the *Martinez* report confirms that, on January 19, 2017, Williams was moved from one cell to another, where he remained incarcerated until February 17, 2017, when he was moved back to his immediately previous cell. *See* Dkt. No. 15-5 at 6-7. While the report contains sworn testimony that Williams was not moved for a retaliatory reason, *see id.*, to the extent that this testimony conflicts with Williams's version of this incident, the Court should not consider it. But the Court may consider evidence in the report indicating that, during this period, Williams filed a grievance complaining that the cell was too cold but failed to file a grievance concerning the conclusory assertions supporting his claims against Lieutenant Stroud – that the cell was "out of service" or had a "broken toilet and shower." *See* Dkt. No. 15-3 at 5-6.

Thus, a material fact required to support the claim against Lieutenant Stroud is that he subjected Williams to unconstitutional conditions of confinement. Williams's allegations in support of this fact are conclusory. Alleging that a cell that was generally "out of service" or that a toilet or shower was broken and thus the cell could be considered unsanitary – without alleging more – is not enough to allege a constitutional violation, particularly where a plaintiff failed to file a grievance specific to such conditions while, during the same time period, he did file a grievance raising

other concerns with his cell. *See Akindele v. Arce*, No. 15 C 5952, 2017 WL 467683, at *3 (N.D. Ill. Feb. 3, 2017) ("When assessing the objective severity of unsanitary conditions, the court must consider their nature and duration, as well as any resulting harm." (citations omitted)); *see, e.g., Crouchman v. Pickens Cnty. Council*, Civ. A. No. 9:16-0804-CMC-BM, 2017 WL 767185, at *12 (D.S.C. Feb. 3, 2017) ("Plaintiff's allegation in his Complaint that sometimes his toilet or sink would be broken 'for days' and that on occasion he had to be 'let out to use the common area bathroom because his toilet don't work' does not establish a constitutional violation." (citations omitted)), *rec. adopted*, 2017 WL 749393 (D.S.C. Feb. 27, 2017); *cf. Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) (A plaintiff must ultimately "do more than demonstrate a triable issue of fact with respect to the conditions he faces; he must also show that he suffered some cognizable harm from the overall lack of a sanitary environment, and that the [defendant's] deliberate indifference caused that harm." (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978))).

    For these reasons, Williams has not alleged a plausible claim against Lieutenant Stroud, and his claim against this defendant should now be dismissed with prejudice.

III.    <u>Deliberate Indifference</u>

    "[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001). Through the procedural and substantive due process guarantees of the Fourteenth Amendment, then, "the deliberate indifference standard articulated ... in *Farmer v. Brennan*, 511 U.S. 825, 837-40 (1994), applies to pretrial

detainees." *Thomas v. Mills*, 614 F. App'x 777, 778 (5th Cir. 2015) (per curiam) (citing *Hare*, 74 F.3d at 643).

To state a constitutional claim, Williams must allege that jail officials acted with deliberate indifference such as to cause the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). "Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight." *Alvarez v. City of Brownsville*, 904 F.3d 382, 391 (5th Cir. 2018) (en banc) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617-18 (5th Cir. 2009) (quoting, in turn, *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992))). "[T]he 'failure to alleviate a significant risk that [the official] should have perceived, but did not' is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer*, 511 U.S. at 838); *cf. id.* ("Deliberate indifference is an extremely high standard to meet."); *accord Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018). And a disagreement with medical treatment or a failure to provide additional medical treatment – alone – does not constitute deliberate indifference. *See Domino*, 239 F.3d at 756; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *see also Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (to establish a constitutional violation, a plaintiff must show that medical staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical

needs").

The Court initially allowed to proceed two specific medical claims made by Williams:

> that on November 26, 2016, he informed Nurse Jana that he was unable to support his head "due to excruciating neck pain," and that she responded that "the hospital isn't an option" and "left [him] in that state." And, as to Nurse Angela, ... that, on August 17, 2017, she was informed of his "medical emergency calls" and failed to respond for 11 hours, and, when she did arrive, she refused him "medical assistance despite [his] dizziness, numbness and severe chest pain and pressure walking off after she stat[ed that] she [was] upset with me."

*Williams I*, 2018 WL 2031915, at *6 (citations omitted).

The *Martinez* report picks up where Williams's allegations leave off – or provides the context needed to determine whether those allegations are factually plausible. As to the first claim, accepting that Nurse Jana told Williams that "the hospital isn't an option," medical records also reflect that Williams was given Naproxen 220 mg after complaining of neck pain, *see* Dkt. No. 15-4 at 33, and that, just a few days later, on November 30, 2016, he refused to see a doctor, *see id.* at 36-38. Similarly, to place the August 2017 complaint against Nurse Angela into context, the records attached to the report reflect that Williams was on a hunger strike at that time and that he was being monitored by Nurse Jana, who was receiving regular reports as to his condition from officers and Nurse Angela. *See, e.g.,* Dkt. No. 15-4 at 45-49.

For these reasons, Williams has failed to plausibly allege that either Nurse Jana or Nurse Angela was deliberately indifferent to his medical care, and his claims against these defendants should now be dismissed with prejudice.

## Recommendation

The Court should dismiss this action with prejudice for failure to state a claim on which relief may be granted.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 4, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE